**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| IN RE: | ) |
| | ) Case No. 08-10289 (BLS) |
| CHARYS HOLDING COMPANY, INC. and | ) |
| CROCHET & BOREL SERVICES, INC., | ) Chapter 11 |
| | ) |
| | ) Jointly Administered |
| Debtors. | ) |
| _____ | ) |
| CHARYS LIQUIDATING TRUST and | ) |
| C&B LIQUIDATING TRUST, | ) Adv. Pro. No. 10-50213 (BLS) |
| | ) |
| Plaintiffs, | ) |
| v. | ) |
| | ) |
| MCMAHAN SECURITIES CO., L.P., | ) |
| | ) |
| Defendant. | ) |
| _____ | )    Re: Docket No. 6 |

Frederick B. Rosner
Scott J. Leonhardt
MESSANA ROSNER & STERN LLP
1000 N. West Street
Suite 1200
Wilmington, DE 19801

*Counsel for Defendant
McMahan Securities Co., L.P.*

Michael G. Busenkell
WOMBLE, CARLYLE
SANDRIDGE & RICE, PLLC
222 Delaware Avenue
Suite 1501
Wilmington, DE 19801

Philip J. Mohr
WOMBLE, CARLYLE
SANDRIDGE & RICE, PLLC
One West Fourth Street
Winston-Salem, NC 27101

*Counsel for Plaintiffs Charys
Liquidating Trust and
C&B Liquidating Trust*

## OPINION[1]

Before the Court is a motion to dismiss (the "Motion") [Docket No. 6] brought by McMahan Securities Co., L.P. ("McMahan" or "Defendant") seeking dismissal of the First Amended Complaint (the "Complaint") [Docket No. 10] filed by Charys Liquidating Trust and C&B Liquidating Trust (together, the "Trusts" or "Plaintiffs").  The Complaint asserts three counts.  Counts I and II seek avoidance of transferred monies on constructive fraudulent transfer theories pursuant to sections 548(a)(1)(B) and 544 of the Bankruptcy Code.  Count III seeks recovery of any avoidable transfers pursuant to section 550 of the Bankruptcy Code.  By the Motion, Defendant seeks dismissal of the Complaint for failure to state a claim upon which relief can be granted.  For the following reasons, the Court will deny the Motion.

## I. BACKGROUND

On or about October 11, 2006, Charys Holding Company, Inc. ("Charys") entered into an agreement with McMahan (the "Engagement Letter") whereby McMahan agreed to serve as Charys's "exclusive financial advisor and placement agent" in connection with a private placement by Charys of up to $150 million in

---

[1]      "The court is not required to state findings or conclusions when ruling on a motion under Rule 12 . . ." Fed. R. Bankr. P. 7052(a)(3). Accordingly, the Court herein makes no findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

senior convertible notes (the "Notes"). (Compl. ¶ 10). The Engagement Letter also provided McMahan the option, which McMahan subsequently exercised, to place an additional fifteen percent (15%) of the amount of the offering. (Id. at ¶ 11). Charys later entered into an indenture agreement with the Bank of New York Mellon Trust Company, N.A., as trustee, and then issued $201,250,000 of Notes (the "McMahan Financing"). (Id. at ¶ 13).

The Engagement Letter provided that McMahan was to receive a fee of four percent (4%) of aggregate gross proceeds of a placement up to $75 million and a fee of five percent (5%) of aggregate gross proceeds in excess of $75 million. (Id. at ¶ 12).

On or about February 16, 2007, McMahan withheld $9,957,000 million from Charys's portion of the initial proceeds of $175 million from the first Notes issuance. On or about March 8, 2007, McMahan withheld an additional $1,434,635.42 from Charys's portion of the additional proceeds of $26,250,000 from the second Notes issuance. McMahan received payments totaling $11,391,635.42 (the "Transfers") on account of the McMahan Financing. (Id. at ¶¶ 14-15).

The Complaint alleges that pursuant to the terms of the Engagement Letter, McMahan's fees should have totaled not more than $9,312,500. (Id. at ¶ 17). McMahan's fees allegedly

exceeded the amounts provided for in the Engagement Letter by $2,079,135.42. (Id. at ¶ 17). In addition, Plaintiffs allege that McMahan's fees exceeded the prevailing market rate for comparable investment banking services. (Id. at ¶ 16). Plaintiffs further allege that McMahan failed to obtain favorable terms on the Notes, failed to conduct proper due diligence in connection with the Notes issuance, and encouraged Charys to take on more debt than was justified by Charys's financial position. (Id. at ¶¶ 16, 18). On account of McMahan's allegedly excessive fees and the facts alleged, Plaintiffs conclude that Charys did not receive reasonably equivalent value for the Transfers. (Id.).

Plaintiffs allege that prior to the Transfers, in January of 2007, Charys's balance sheet reflected tangible net assets of $74,667,392 and then-current liabilities of $97,749,969. (Id. at ¶ 21). Although Charys's balance sheet also reflected intangible goodwill of over $208 million, Plaintiffs allege that this goodwill was rendered valueless by going-concern opinions issued by Charys's independent outside accountants. (Id. at ¶ 23).

Following the Transfers in April of 2007, Charys's financial position further deteriorated. As of April 30, 2007, Charys reported tangible net assets of $99,143,037 and then-current liabilities of $203,856,454. (Id. at ¶ 23). Charys

4

also reported intangible goodwill of over $162 million, however, this goodwill was again allegedly rendered valueless by going-concern opinions issued by Charys's independent outside accountants.  (Id. at ¶¶ 23, 24).  Plaintiffs further allege that Charys's tangible assets were overvalued at all relevant times.  (Id. at ¶ 25).

Accordingly, Plaintiffs allege that Charys was insolvent prior to the Transfers, following the Transfers, and remained insolvent through February 14, 2008 (the "Petition Date"), when Charys, along with its affiliate Crochet & Borel Services, Inc. (together, the "Debtors") filed petitions for relief under chapter 11 of title 11 of the United States Code. (Id. at ¶ 28).

Over a year thereafter, on February 24, 2009, the Court entered an Order  (the "Confirmation Order") [Docket No. 669] confirming the First Amended Joint Plan of Reorganization of Debtors and Certain Nondebtor Affiliates under Chapter 11 of the Bankruptcy Code, Dated December 8, 2008 (the "Plan").  Pursuant to the Plan and Confirmation Order, the Trusts were created and certain of the Debtor's assets, including avoidance causes of action were transferred to the Trusts.

Thereafter, on February 12, 2010, the Trusts instituted this adversary proceeding by filing the Complaint.  On April 8, 2010, McMahan filed the Motion, seeking to dismiss the Complaint.  The Trusts filed a response in opposition to the

Motion (the "Response") [Docket No. 9], and an amended version
of the Complaint [Docket No. 10].   McMahan then filed a reply
(the "Reply") [Docket No. 15].   McMahan also requested that the
Court hear oral argument on the Motion [Docket No. 22], which
request the Court has declined [Docket No. 25].   This matter has
been fully briefed and is ripe for decision.

## II. <u>JURISDICTION</u>

The Court has jurisdiction over this matter pursuant to 28
U.S.C. §§ 1334 and 157.   Venue is proper in this Court pursuant
to 28 U.S.C. §§ 1408 and 1409.   Consideration of the Motion
constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A) and
(H).

## III. <u>STANDARD OF REVIEW</u>

Defendant seeks dismissal of the Complaint pursuant to
Federal Rule of Civil Procedure 12(b)(6), made applicable by
Federal Rule of Bankruptcy Procedure 7012, for "failure to state
a claim upon which relief can be granted."   Fed. R. Civ. P.
12(b)(6).   A Rule 12(b)(6) motion tests the sufficiency of a
complaint's factual allegations.   <u>Bell Atl. Corp. v. Twombly</u>,
550 U.S. 544, 555 (2007); <u>Kost v. Kozakiewicz</u>, 1 F.3d 176, 183
(3d Cir. 1993).   A court's fundamental inquiry in the Rule
12(b)(6) context is "not whether a plaintiff will ultimately
prevail but whether the claimant is entitled to offer evidence
to support the claims."   <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236

(1974), abrogated on other grounds by <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 814-15 (1982).

To decide a motion to dismiss, a court must "accept all well-pleaded allegations in the complaint as true, and view them in the light most favorable to the plaintiff." <u>Carino v. Stefan</u>, 376 F.3d 156, 159 (3d Cir. 2004); <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 231 (3d Cir. 2008). In addition, all reasonable inferences are drawn in favor of the plaintiff. <u>Kost</u>, 1 F.3d at 183.

Following the Supreme Court's recent rulings on Rule 12(b)(6) in <u>Twombly</u> and <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937 (2009), the Third Circuit recognized that reviewing a Rule 12(b)(6) motion requires a two-part analysis. <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210 (3d Cir. 2009). First, a court should separate the factual and legal elements of a claim, accepting the facts and disregarding the legal conclusions. <u>Id.</u> at 210-11. Second, a court should determine whether the remaining well-pled facts sufficiently show that the plaintiff "has a plausible claim for relief." <u>Id.</u> at 211 (internal quotations omitted). Put another way:

> [S]tating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest the required element. This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable

> expectation that discovery will reveal
> evidence of the necessary element.

Phillips, 515 F.3d at 234 (internal quotations omitted)
(citations omitted).

Federal Rule of Civil Procedure 8, applicable here pursuant
to Federal Rule of Bankruptcy Procedure 7008, requires that a
complaint contain, "a short and plain statement of the claim
showing that the pleader is entitled to relief," to "give the
defendant fair notice of what the . . . claim is and the grounds
upon which it rests." Twombly, 550 U.S. at 555 (quoting Conley
v. Gibson, 355 U.S. 41, 47 (1957). These standards govern the
Motion.[2]

---

[2]    Plaintiffs' constructive fraudulent transfer claims are
governed by Rules 8 and 12(b)(6) and not the heightened Rule
9(b) pleading standard. China Resource Prods. (U.S.A.) Ltd. v.
Fayda Int'l, Inc., 788 F. Supp. 815, 819 (D. Del. 1992)
("Despite the similarity in the terms 'fraud' and 'fraudulent
conveyance,' the pleading requirements for fraud are not
necessarily applicable to pleadings alleging a [constructive]
fraudulent conveyance."); Astropower Liquidating Trust v.
Xantrex Tech., Inc., (In re AstroPower Liquidating Trust), 335
B.R. 309, 333 (Bankr. D. Del. 2005) ("[A] claim of constructive
fraud need not allege the common variety of deceit,
misrepresentation or fraud in the inducement.") (quoting Global
Link Liquidating Trust v. Avantel, S.S. (In re Global Link
Telecom Corp.), 327 B.R. 711, 717-18 (Bankr. D. Del. 2005));
Contra OHC Liquidating Trust v. Nucor Corp. (In re Oakwood Homes
Corp.), 325 B.R. 696, 698 (Bankr. D. Del. 2005) ("Rule 9(b)
applies to adversary proceedings in bankruptcy which include a
claim for relief under §§ 544 or 548, whether it is based upon
actual or constructive fraud.").

## IV. **PARTIES' POSITIONS**

### A.   **Defendant's Position**

Defendant argues that the Complaint should be dismissed because it fails to sufficiently allege facts supporting constructive fraudulent transfers.  (Def.'s Br. 1).  Defendant argues that the Complaint's pleading deficiencies include a lack of facts regarding what services McMahan provided to which Debtors and how such services were not reasonably equivalent value for the Transfers.  (Id. at 2).  Additionally absent, argues Defendant, are facts regarding the Debtors' insolvency. (Id. at 2).  Defendant also argues that the Complaint acknowledges that the Transfers were made on account of an antecedent debt, and therefore, the Transfers were for reasonably equivalent value and cannot be avoided as fraudulent. (Id. at 1).  Defendant attempts to draw a distinction between avoidance of the Transfers and avoidance of Charys's obligations under the Engagement Letter.  (Def.'s Reply 6-7).  Defendant argues that because the Complaint only seeks to avoid the Transfers and not the Engagement Letter, the Complaint is deficient.  (Id.).

Defendant further maintains that Plaintiffs' section 544(b) claim, which incorporates the laws of three states and two uniform laws, fails to provide fair notice of the applicable state law. (Def.'s Br. 16).

Defendant also contends that a forum selection clause in the Engagement Letter is binding on the Trusts and that claims related to the Engagement Letter must be brought in Connecticut. (Def.'s Reply 4-5).  Defendant argues that Plaintiffs have not met their burden to show that enforcement of the clause would be unreasonable or unfair under the circumstances and that, in fact, enforcement would be reasonable.  (Id. at 5).

Defendant finally argues that the C&B Liquidating Trust has no interest in the assets of the estate of Debtor Charys, including avoidance actions, and therefore, the C&B Liquidating Trust has no right to prosecute the Complaint against McMahan. (Def.'s Reply 2-3).  As a result, argues Defendant, the C&B Liquidating Trust is not entitled to relief on account of the Transfer.  (Id.).

**B.   Plaintiffs' Position**

Plaintiffs argue that the Complaint, as amended, addresses the alleged pleading deficiencies and adequately pleads claims for constructive fraudulent transfers.  Plaintiffs contend that the amended Complaint specifies the Transfers that were made, the debtor that made the Transfer (Charys), and Charys's insolvency (Pl.s' Resp. 8-10).  In addition, Plaintiffs argue that they allege sufficient facts to show lack of reasonably equivalent value under a totality of the circumstances analysis because the Transfers were both above market rates and the rates

10

agreed to in the Engagement Letter.  (<u>Id.</u> at 4-5).  Plaintiffs

argue that transfers of account of antecedent debt are not <u>per</u>

<u>se</u> transfers for reasonably equivalent value.  (<u>Id.</u> at 3-5).

     Plaintiffs further argue that forum selection clauses do

not apply to statutory fraudulent transfer claims, because such

claims constitute core proceedings that arise by operation of

statute rather than from a contract, and are asserted

derivatively on behalf creditors who were not parties to the

original contract.   (<u>Id.</u> at 6-7).

     Finally, Plaintiffs argue that the Complaint clearly

provides fair notice of the applicable state law that

Plaintiffs' section 544 claims alternatively arise under. (<u>Id.</u>

at 10-11).  Accordingly, Plaintiffs request that the Court deny

the Motion.

<b>V. <u>DISCUSSION</u></b>

**A.    The Forum Selection Clause Does Not Govern Plaintiffs'
       Constructive Fraudulent Transfer Claims**

     The Third Circuit has recognized that the law of the state

whose law governs the construction of a contract "generally

applies to the determination whether to enforce a forum

selection clause unless "a significant conflict between some

federal policy or interest in the use of state law exists."

<u>Diaz Contracting Inc. v. Nanco Contracting Corp.</u>, 817 F.2d 1047,

1050 (3d Cir. 1987), overruled on other grounds by <u>Lauro Lines</u>

11

v. Chasser, 490 U.S. 495 (1989) (internal quotations removed).

It is undisputed that the Engagement Letter specifies

Connecticut courts as the proper forum for claims arising under

the Engagement Letter.[3]  Connecticut courts have adopted the

standards enunciated by the United States Supreme Court in M/S

Bremen v. Zapata Off-Shore Co., 407 U.S. 1 (1972) to determine

the enforceability of forum selection clauses.  See United

States Trust Co. v. Bohart, 495 A.2d 1034, 1039-40 (Conn. 1985).

    In Bremen, the United States Supreme Court stated that "a

forum selection clause is prima facie valid and should be

enforced unless enforcement is shown by the resisting party to

be 'unreasonable' under the circumstances."  Bremen, 407 U.S. at

10.  As explained by the Bremen court, a forum selection clause

---

[3]    The   forum   selection   clause   in   the   Engagement   Letter
provides:
> This   agreement   shall   be   governed   by   and
> construed in accordance with the laws of the
> State    of    Connecticut    applicable    to
> agreements made and fully performed therein,
> without    regard    to    conflicts    of    law
> principles. The Company [Charys] irrevocably
> submits  to  the  exclusive  jurisdiction  of  any
> court  of  the  State  of  Connecticut  or  the
> United   States   District   Court   for   the
> District  of  Connecticut  for  the  purpose  of
> any  suit,  action  or  other  proceeding  arising
> out   of   this   Agreement,   or   any   of   the
> agreements   or   transactions   contemplated
> hereby,  which  is  brought  by  or  against  the
> Company . . . .

Engagement Letter, ¶ 11.

may be unreasonable if: i) it is the result of fraud or overreaching; ii) serious inconvenience would result from litigating in the selected forum; or iii) enforcement would result in contravention of a strong public policy in the selected forum.  Id. at 15-17.

Despite the general preference for enforcement of forum selection clauses, it is an open question whether forum selection clauses are applicable in "core" bankruptcy proceedings.  See Diaz, 817 F.2d at 1051 n.9 (noting that the argument that "Congress could not have intended to permit contractual forum selection clauses to override the policy of the Bankruptcy Code to concentrate core bankruptcy proceedings in the bankruptcy court in order to effectuate the Congressional purpose of speedy rehabilitation of the debtor" was "not foreclosed by our decision in Coastal Steel.").

Following Diaz, bankruptcy courts in this Circuit have recognized that forum selection clauses should not be enforced in core matters, and specifically with regard to fraudulent transfer claims.  Astropower Liquidating Trust v. Xantrex Tech. Inc., 335 B.R. 309, 328 (Bankr. D. Del. 2005) (refusing to enforce forum selection clause as to core fraudulent transfer claims); Wheeling-Pittsburgh Steel Corp. v. Blue Cross Blue Shield of West Virginia, Inc., 108 B.R. 82 (Bankr. W.D. Pa. 1989); Ellwood City Iron & Wire Co. v. Flakt, Inc. Envt'l Sys.

Div., 59 B.R. 53 (Bankr. W.D. Pa. 1986). See also In re Iridium Operating LLC, 285 B.R. 822, 837 (S.D.N.Y. 2002) ("[A]lthough there is a strong policy favoring the enforcement of forum selection clauses in this Circuit, this policy is not so strong as to mandate that forum selection clauses be adhered to where the dispute is core."); In re N. Parent, Inc., 221 B.R. 609, 622 (Bankr. D. Mass. 1998) ("Retaining core proceedings in this Court, in spite of a valid forum selection clause, promotes the well-defined policy goals of centralizing all bankruptcy matters in a specialized forums to ensure the expeditious reorganization of debtors."). Contra In re D.E. Frey Grp., Inc., 387 B.R. 799, 804-06 (D. Colo. 2008).

In Astropower, the Delaware Bankruptcy Court refused to apply a forum selection clause to fraudulent transfer claims and accordingly, denied a motion to dismiss for improper venue. Astropower, 335 B.R. at 328. The Astropower court provided three reasons for not applying the forum selection clause. Id. First, the court noted the fraudulent transfer claims arose after the contract containing the forum selection clause ceased to exist. Id. Second, the court observed that the fraudulent transfer claims did not arise from the relevant contract, but rather arose by operation of statute. Id. Third, the court noted that fraudulent transfer claims are derivative, and that the debtor's creditors, who were not parties to the original

contract, were the real parties in interest. Id.  The Astropower court recognized that enforcement of forum selection clauses in non-core matters, but not in core matters, appropriately balanced the parties' freedom of contract rights.  Id. at 329. Accordingly, the court enforced the forum selection clause with respect to the non-core claims, but did not enforce the clause with respect to the core fraudulent transfer claims.  Id.

This Court is persuaded by the reasoning of Astropower. Like the Astropower court, this Court is reviewing a complaint asserting causes of action that arise by operation of statute. In both Diaz and Coastal Steel, the Third Circuit determined the applicability of forum selection clauses in the context of pre-petition breach of contract claims.  The claims arose from the same document containing the forum selection clause and were clearly non-core.  Moreover, the Third Circuit has explicitly recognized that Coastal Steel left open the question of whether the analysis would be different with respect to core matters. Diaz, 817 F.2d at 1051 n.9.

Here, Plaintiffs' claims are core matters arising by operation of statute and not from a pre-petition contract.  The viability of Plaintiffs' claims depends on factors other than the terms of the Engagement Letter and the parties conduct, such as Charys's financial condition at the time of the Transfers. In addition to the general bankruptcy policy of consolidating

15

issues related to a debtor's estate, there are further policy
reasons supporting the litigation of statutory avoidance actions
in the bankruptcy court.  These reasons include the fact that
the actions arise irrespective of any contract between the
parties and that the real parties in interest are the debtor's
creditors, who were not parties to the original contract.  See
Astropower, 335 B.R. at 328.  As a result, Plaintiffs are not
bound by the forum selection clause and may litigate their
fraudulent transfer claims in this Court.

**B.   The Complaint Adequately Alleges Constructive Fraudulent
      Transfers**

    Bankruptcy Code section 548(a)(1)(B) authorizes the
avoidance of transfers of interests in the debtor's property
occurring within two years prior to the petition date if the
debtor "received less than a reasonably equivalent value in
exchange for such transfer or obligation; and (ii)(I) was
insolvent on the date that such transfer was made or such
obligation was incurred . . ." 11 U.S.C. § 548(a)(1)(B)(i),
(ii)(I).

    Section 544, in turn, authorizes avoidance of transfers of
an interest of the debtor in property that are voidable by an
unsecured creditor under applicable state law. 11 U.S.C. §
544(b)(1).  Here, Plaintiffs have alleged that the Transfers are
avoidable under "applicable state law, including, but not

limited to, the Georgia Uniform Fraudulent Transfer Act, Ga.
Code § 18-[2]-[7]0 et seq., the Delaware Fraudulent Transfer
Act, 6 Del. C. § 1301 et seq., [and] the New York Fraudulent
Conveyance Act, N.Y. Debt. and Cred. Law. Art. 10 (§ 270 et
seq.) . . . ."[4]  (Compl. ¶ 45).  Plaintiffs have properly pled
various state laws in the alternative and put Defendant on
adequate notice of what claims Plaintiffs are asserting.

Both Delaware and Georgia have adopted the Uniform
Fraudulent Transfer Act ("UFTA"); whereas New York has adopted
the Uniform Fraudulent Conveyance Act ("UFCA").  As a general
matter both UFTA and UFCA, as adopted by these states, allow a
debtor's creditors to recover property when it is transferred by
the debtor without receiving reasonably equivalent value (or

---

[4]    Section 1305(a) of the Delaware Code and section 18-2-75
(a) of the Georgia Code state in pertinent part: "A transfer
made or obligation incurred by a debtor is fraudulent as to a
creditor whose claim arose before the transfer was made or the
obligation was incurred if the debtor made the transfer or
incurred the obligation without receiving a reasonably
equivalent value in exchange for the transfer or obligation and
the debtor was insolvent at that time or the debtor became
insolvent as a result of the transfer or obligation." 6 Del.
Code Ann. tit. 6, § 1305(a) (2010); Georgia Code Ann. § 18-2-75
(2009).
      Section 274 of New York's Debtor & Creditor Law provides:
"Every conveyance made without fair consideration when a person
making it is engaged or is about to engage in a business
transaction for which the property remaining in his hands after
the conveyance is an unreasonably small capital, is fraudulent
as to creditors and as to other persons who become creditors
during the continuance of such business or transaction without
regard to his actual intent."  N.Y. Debt. & Cred. § 274 (2010).

fair consideration) if the debtor is insolvent or becomes insolvent as a result of the transfer.  The elements of an avoidable transfer under UFTA or UFCA, as adopted by the individual states, do not substantially vary from the elements set forth in Bankruptcy Code section 548(a)(1)(B).

Thus, to survive a motion to dismiss, Plaintiffs' constructive fraudulent transfer claims predicated on section 548 or 544 must allege sufficient facts that plausibly show: (i) a transfer within the applicable time period; (iii) Charys's insolvency; and (iii) a lack of reasonably equivalent value (or fair consideration).

Here, the Complaint alleges that in connection with the 2007 Financing, McMahan withheld: (i) $9,957,000 on or about February 16, 2007; and (ii) $1,434,635.42 on or about March 8, 2007.  (Compl. ¶ 15).  These withholdings were made within the two years preceding the Petition Date.  There is no dispute that the Transfers were made within the applicable time period.

The Complaint also sufficiently alleges that the Transfers were made while Charys was insolvent.  The Complaint states that as of January 31, 2007 "Charys reported . . . a working capital deficit of $38 million." (Compl. ¶ 20).  In addition, at that time, Charys's consolidated balance sheet reflected intangible goodwill of $208,646,779 and tangible net assets of $74,667,392. (Id. at ¶ 21).  Charys's then-current liabilities were

$97,749,969. (Id.). The Complaint asserts that by April of 2007, Charys's balance sheet reflected intangible goodwill of $162,787,431, tangible net assets of $99,143,037, and then-current liabilities of $203,856,454. (Id. at ¶ 23). The Complaint further alleges that due to going-concern opinions issued by independent accountants in 2006 and 2007, Charys's goodwill was rendered valueless. (Id. at ¶ 24). In addition, the Complaint alleges that "Charys's tangible net assets were also overvalued at the time of the [T]ransfer[s] . . . ." (Id. at ¶ 25).

Assuming the truth of the above facts, as the Court must on a motion to dismiss, Plaintiffs have adequately alleged that the Transfers were made within the statutory period and at a time when Charys was insolvent. See Joseph v. Frank (In re Troll Commc'ns, LLC), 385 B.R. 110, 123-24 (Bankr. D. Del. 2008) (partially denying motion to dismiss and finding insolvency adequately pled where complaint alleged facts showing that debtors' liabilities exceeded their assets as of a year prior to bankruptcy filing and continuing through the petition date and where going concern opinion rendered debtors' goodwill valueless).

The Complaint must also, however, adequately allege a lack of reasonably equivalent value. On this element, the Complaint avers that "McMahan's fees were excessive compared to comparable

fees charged by investment banks for similar placements" and that "McMahan's fees execeeded the fees permitted under the terms of the Engagement Letter." (Compl. ¶¶ 32-33). Plaintiffs also appear to insinuate that McMahan's work was substandard by alleging that McMahan performed insufficient due diligence and was unable to obtain favorable terms on the Notes. (See id. at ¶¶ 16, 18). Accordingly, Plaintiffs allege that "Charys received less than a reasonably equivalent value in exchange for the Transfers to McMahan." (Id. at ¶ 30).

The term "reasonably equivalent value" is not defined in the Bankruptcy Code, however, the Third Circuit has noted that "a party receives reasonably equivalent value for what it gives up if it gets 'roughly the value it gave.'" VFB LLC v. Campbell Soup Co., 482 F.3d 624, 631 (3d Cir. 2007). To determine reasonably equivalent value, the Third Circuit requires a "totality of the circumstances" analysis, taking into account "the good faith of the parties, the difference between the amount paid and the market value, and whether the transaction was at arms length." Peltz v. Hatten, 279 B.R. 710, 736 (D. Del. 2002) (quoting Mellon Bank, N.A. v. Official Comm. of Unsecured Creditors of R.M.L., Inc. (In re R.M.L., Inc.), 92 F.3d 139, 148-49 (3d Cir. 1996). This analysis is inherently fact driven. See Peltz, 279 B.R. at 736.

Plaintiffs here have alleged that the Transfers to McMahan were in excess of the prevailing market and applicable contract rates. Plaintiffs allege that McMahan received a total of $11,391,635.42, which exceeded the fees allowed in the Engagement Letter by $2,079,135.42. (Compl. ¶ 17).[5] Plaintiffs also allege that the fees "exceeded the prevailing rate for comparable investment banking services." (Id. at ¶ 16). These allegations go to showing a gap between market rates and the amounts paid.

In reply, Defendant argues that In re APF Co., 308 B.R. 183 (Bankr. D. Del. 2004) compels the determination that payments made pursuant to the terms of a mutually agreed-to contract are transfers for reasonably equivalent value per se. (Def.'s Reply 6). Defendant states that in APF, "the court noted that 'the value transferred to [d]efendants represented by the [p]ayments was precisely equal to the value received by [the debtor] represented by a dollar for dollar credit on the [n]ote

---

[5]   Defendant argues that, even though the Engagement Letter was not attached to the Complaint, it was relied upon therein and the Court may consider the Engagement Letter under the "integral exception" without converting the Motion into one for summary judgment. Plaintiffs do not appear to disagree and have not disputed the authenticity of the Engagement Letter attached as an exhibit to Defendant's brief in support of the Motion. The Court agrees with Defendant that several of the Complaint's allegations rely on the Engagement Letter and the Court may consider the Engagement Letter without converting the Motion. Winer Family Trust v. Queen, 503 F.3d 319, 328 (3d Cir. 2007).

obligations.  As a matter of law, the [c]ourt must conclude from the facts of the [c]omplaint that [d]ebtor received reasonably equivalent value on account of the [p]ayments.'"  (Id., quoting In re APF Co., 308 B.R. at 186).  Although the APF court ultimately determined that a lack of reasonably equivalent value had not been adequately alleged, the above quote is the court's statement of the defendant's position, not the "reasoning" of the court, as indicated by Defendant in its brief.  However, even if the APF court had stated the foregoing as its holding, which it did not, APF is easily distinguishable because the transfers there were on account of a promissory note.  APF, 308 B.R. at 187.  Here, McMahan did not lend Charys money and the Transfers were not in satisfaction of a promissory note. Rather, the Transfers here were on account of a pre-petition contract and were allegedly over the amounts allowed in the contract.

In sum, reasonably equivalent value is a fact intensive determination that typically requires testing through the discovery process.  Based on the totality of the circumstances as alleged in the Complaint, the Court could infer that Charys did not receive services commensurate with the $11,391,635.42 in Transfers.  The Motion will be denied with respect to Counts I and II.

**C.    The Complaint Adequately States a Claim for Recovery of Avoided Transfers**

Count III of the Complaint seeks to recover the Transfers pursuant Bankruptcy Code section 550(a), that states:

> [e]xcept as otherwise provided in this section, to the extent that a transfer is avoided under section 544, . . . [or] 548 . . . of this title, the trustee may recover, for the benefit of the estate, the property transferred . . . from – (1) the initial transferee of such transfer of the entity for whose benefit such transfer was made; or (2) any immediate or mediate transferee of such initial transferee.

11 U.S.C. § 550(a).  The Complaint alleges that that "[o]n or about February 16, 2007, McMahan withheld $9,957,000 from Charys's portion of a $175,000,000 in proceeds of from [sic] the initial issuance of the senior convertible notes.  On or about March 8, 2007, McMahan withheld $1,434,635.42 in fees from Charys's portion of an additional $26,250,000 in proceeds from a second issuance of the senior convertible notes." (Compl. ¶ 15). The Complaint attaches documentation of the withholdings.  (See Compl. Ex. A).  The Complaint contains sufficient facts from which the Court could infer that McMahan was the initial transferee of transfers that are avoidable pursuant to section 544 or 548 of the Bankruptcy Code.  As explained above, the Court will deny the Motion with respect to Plaintiffs' claims

under sections 544 and 548 and will likewise deny the Motion
with respect to Plaintiffs' section 550 claim.[6]

## VI. <u>CONCLUSION</u>

The Court will deny the Motion.  An appropriate Order
follows.

By the Court,

_____
Dated:  August 27, 2010          Brendan Linehan Shannon
                                 United States Bankruptcy Judge

---

[6]     To the extent that the Motion contained other grounds for
dismissal, the Court has considered and rejects such arguments.